**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**REBECCA ROBERTSON,**

    **Plaintiff,**

**v.**                                                                                  **Case No.  8:04-cv-1547-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**

_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was forty-two years of age at the time of her administrative hearing.  She stands 5', 7" tall and weighed 160 pounds.  Plaintiff has an eleventh grade education.  Her past relevant work was as a cashier-checker in a convenience store, housekeeper in a hospital, kitchen helper, and transformer molder.  Plaintiff applied for disability benefits and Supplemental Security Income payments in early 2002, alleging disability as of June or July

2001, by reason of neck pain, shoulder pain and depression.[1]  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job because of problems with her neck and shoulder and an inability to stand for a long period of time or bend her head.  She testified that her neck hurts badly, sometimes to the point where it causes a migraine-like headache.  Plaintiff also testified that her neck pain causes burning and numbness in her shoulders, and she sometimes experiences muscle spasms in her shoulders and neck.  When Plaintiff experiences such pain, she lies down and takes over-the-counter pain medication.  Plaintiff previously saw a doctor and took medication for these problems, but she testified that she cannot afford either because she does not have health insurance.  In the past, she had taken Paxil CR for depression, Celebrex for arthritis and physical therapy.  Again, she could not afford to continue with her physical therapy.  She has not been hospitalized for any of these problems.

According to Plaintiff, she has had these problems for awhile, but they worsened because of her work.  Plaintiff described her past work as a molding trimmer as "kind of heavy work."  She estimated that the most she would lift in performing the work was twenty pounds, and she would bend her neck about eight hours of the day.  Plaintiff also has worked as a cashier and food preparer, but she had not attempted to return to those jobs.

Plaintiff lives with her husband, who works as a crew chief for a tree service.  They have children aged twenty-two, twenty, and fifteen.  Her fifteen-year-old son is the only child

---

[1]Plaintiff's application for Supplemental Security Income payments alleges disability as of June 1, 2001, and her application for disability benefits alleges an onset date of July 17, 2001.  (R. 39-45).

that lives at home. Plaintiff testified that she is able to drive, but she only goes to the grocery store with the help of her husband. She does the cooking and cleaning most of the time. However, when she does the dishes, vacuuming, and other housework, she must stop because her back pain forces her to sit down. Plaintiff testified further that she has difficulty getting to sleep and staying asleep because of pain in her neck or back. She has never undergone any type of counseling or seen a psychologist. Plaintiff stated that she drinks occasionally on the weekends, though she was previously a heavy drinker. She cut back on her drinking a few months earlier because she was taking pills for tremors.

By Plaintiff's account, she has good days and bad days, depending on what people say to her. She cries a lot and keeps to herself most of the time. As for her physical limitations, Plaintiff stated that she has difficulty sitting for a long period of time because of pain in her back and neck. She estimated that she can sit for only a half an hour and walk about five or ten minutes or half a block because of pain in her back. See Plaintiff's testimony (R. 270-80).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of August 26, 2003, the ALJ determined that while Plaintiff has severe impairments related to neck and shoulder numbness and pain, dysthymia, a personality disorder, and alcohol dependence, she nonetheless had the residual functional capacity to perform a wide range of light work. Relying in part on the Dictionary of Occupational Titles (hereinafter "DOT") and Plaintiff's description of her past work as a cashier, the ALJ concluded at step four of the evaluation process that Plaintiff could perform such past work

despite her limitations.[2]  In the alternative, the ALJ found at step five of the evaluation process that Plaintiff's limitations did not significantly erode her occupational base, and using the grids as a frame work for decision, concluded that there remained a significant number of jobs she could perform.  (R. 9-15).  Upon these conclusions, the Plaintiff was determined to be not disabled.  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

---

[2]It is unclear whether the ALJ concluded that Plaintiff could perform her past work as a cashier as she had performed it or that she could perform the job as it is performed generally in the national economy.

4

1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, by his alternative finding, decided the Plaintiff's claim in part pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. See 20 C.F.R. §§ 404.1501, et seq. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are

5

appended to the Regulations and are commonly referred to as "the grids." Id. at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. Id. at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in finding that the Plaintiff could return to past work;

(2) The Commissioner erred in failing to utilize the services of a vocational expert prior to finding that the Plaintiff could perform work activities within the framework of medical vocational rule 202.18; and

(3) The Commissioner erred in her findings on the credibility of the Plaintiff, having set forth insufficient cause for discrediting the Plaintiff's testimony.

For the reasons set forth below, Plaintiff's case is reversed and remanded for further proceedings. Because remand is appropriate on more than one ground, Plaintiff's claims are discussed in turn.

6

By her first claim, Plaintiff argues that the ALJ erred by finding that she could perform her past relevant work as a cashier. In particular, Plaintiff contends that the ALJ failed to fully and adequately evaluate the exertional and nonexertional requirements of her past cashiering position and her ability to perform those requirements in light of her current limitations. By her account, there was only minimal evidence of the tasks of this job in the record, and, in any event, the ALJ eventually relied upon the description of a cashier from the DOT. Plaintiff also contends that her cashiering job involved duties beyond those listed in the DOT, and she suggests that the ALJ erred by finding she could perform that job because her description of it encompassed at least two jobs. Thus, Plaintiff contends that the ALJ was barred from considering the responsibilities of a cashier independent from the requirements of the other job [food preparer]. At minimum, Plaintiff claims that the ALJ was obliged to develop this issue if he was going to rely on her past work as a cashier. Plaintiff further contends that, even if her cashier work was the same as that described in the DOT, the ALJ erred by relying on the DOT description because it (1) did not include the [understated] mental limitations found by the ALJ, (2) did not state, as did the ALJ, that the work was not performed in a high stress environment and only required the ability to perform simple tasks, and (3) indicated that constant reaching was required, which was contrary to the ALJ's finding that she could push, pull and reach overhead only occasionally. For these reasons, Plaintiff urges the court to reverse the ALJ's decision and remand for full development of the evidence. (Doc. 19 at 6-9).

In reaching his decision, the ALJ applied the five-step sequential evaluation process dictated by the Regulations. 20 C.F.R. §§ 404.1520, 416.920. The decision was reached at the fourth step of the process. At this step, the ALJ must determine whether the claimant is

capable of performing her past relevant work. <u>Id.</u> at §§ 404.1520(e), 416.920(e). The review at this step involves the assessment of a claimant's residual functional capacity and requires consideration of the physical and mental demands of her former work. In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." <u>Nimick v. Sec'y of Health & Human Servs.</u>, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); <u>see also</u> <u>Nelms v. Bowen</u>, 803 F.2d 1164, 1165 (11th Cir. 1986).

A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-62, 1982 WL 31386, *3 (S.S.A.);[3] SSR 82-61, 1982 WL 31387, * 2 (S.S.A.). Where it is determined that a claimant can perform her past job as she performed it, the claimant's statements regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. SSR 82-63 at *3; <u>see</u> <u>also</u> SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be sufficient to furnish information about past work). And, where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT. <u>See</u> SSR 82-61 at * 2. While the claimant bears the burden at this step of demonstrating an inability to return to her past

---

[3] Social Security Rulings are binding on all aspects of the Social Security Administration. <u>Hall v. Schweiker</u>, 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sep. 1981).

8

relevant work, the ALJ has a concomitant duty to develop a full record in this regard. Lucas v. Sullivan, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990) (citing Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987); Nelms, 803 F.2d at 1165).

Here, the ALJ determined that Plaintiff had the residual functional capacity (hereinafter "RFC") to perform a "wide range" of light work activity. Thus, he found that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk for 6 hours, sit for 2 hours,[4] and understand, remember and carry out very short and simple instructions, but she could not push, pull or reach overhead or climb stairs or ladders. He further found that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. (R. 12). Thereafter, the ALJ addressed the requirements of Plaintiff's past work as a cashier in relation to her current RFC:

> According to the [DOT], the job as a cashier in retail trade (D.O.T. 211.462-014) is light, semi-skilled work activity . . . To perform this job, one had to lift 20 lbs. occasionally and 10 lbs. frequently. An individual could sit and stand as necessary and walk for 2 hours out of an 8-hour workday. In the claimant's position as cashier, she lifted no more than 10 lbs. and frequently lifted less than 10 lbs. The claimant could sit, stand and walk as necessary and would sit for 30 minutes at a time in her prior position. The claimant testified that she could sit for 30 minutes without pain. The claimant must avoid overhead reaching and the position of cashier does not require the use of the arms above the head. The position of cashier is not performed in a high stress environment and does not require the claimant to perform more than simple tasks.

Id. at 13-14. Thus, the ALJ concluded that Plaintiff retained the RFC to perform her past relevant work as a cashier.

---

[4]In the findings section of the decision, the ALJ appears to have modified the sitting and standing requirements to the extent that he found that Plaintiff could "sit and stand as necessary and walk for 2 hours out of an 8-hour day." (R. 15). This finding indicates a sit/stand option.

9

After careful consideration, I conclude that the ALJ's finding at step four is not supported by substantial evidence. Although it is unclear whether the ALJ determined that Plaintiff could return to her cashier job as she actually had performed it or as it is performed generally in the national economy, neither finding is sufficiently supported. To the extent the ALJ found Plaintiff could perform her actual cashiering job, the ALJ misinterpreted Plaintiff's statements regarding this position and failed to adequately evaluate and develop its physical and mental demands. Here, the only evidence in the record of that job is contained in a form entitled "Work History Report," which Plaintiff completed for the SSA and listed, among other types of past work, two cashiering jobs.[5] (R. 74-81). In finding that Plaintiff could return to work as a cashier, the ALJ relied on tasks Plaintiff identified on this form (R. 13) but he misconstrued them. For instance, Plaintiff reported that the job required her to walk for a total of 6 hours, stand for a total of 6 hours, and sit for a total of a ½ hour; yet the ALJ found that the job allowed Plaintiff to sit, stand, and walk as necessary and sit for 30 minutes "at a time." Compare (R. 76) with (R. 13). The ALJ also found that the job did not require overhead reaching or the ability to perform more than simple tasks and was not

---

[5] One was at the Turner Street Market, where she worked from 1987 to 1990, and the other was at Speedway, where she worked from 1993-1995. (R. 74). Although the form contained a one page questionnaire on each job listed, it appears that Plaintiff only answered questions about the cashiering job at the market. See (R. 74-78). There, she indicated that in addition to using the cash register, she also used the oven, stove and slicer; prepared food; and carried food containers to the sink. (R. 76). Plaintiff, in part, addresses the significance of the ALJ's reliance on this particular cashiering job (as opposed to the job at Speedway). Plaintiff correctly suggests that as described, that position encompasses work as a cashier and work as a food preparer. The ALJ's reliance on the cashiering aspect of this position is another ground for remand. See Bechtold v. Massanari, 152 F. Supp. 2d 1340, 1345-46 (M.D. Fla. 2001) (ruling that, where a claimant's past employment has significant elements of two or more occupations, an ALJ may not bifurcate the position to conclude claimant is not disabled); see also SSR 82-61 at * 2 (recognizing that "composite jobs" have no counterpart in the DOT and vocational expert testimony may be necessary).

performed in a high stress environment.  However, questions concerning those restrictions were not included in the form Plaintiff completed.  See id.  Further, the ALJ did not develop this line of inquiry at the administrative hearing; rather, the only testimony about Plaintiff's past work as a cashier was that Plaintiff had performed work "cashiering, preparing foods." (R. 274).  Accordingly, while generally speaking a claimant's statements may be sufficient for determining the requirements of her past work, the ALJ failed to develop this area and the form Plaintiff completed was inadequate because it did not address the mental demands of the job, whether a sit/stand option was allowed, or the type of reaching the job required.

To the extent the ALJ that found Plaintiff retained the RFC to perform the cashiering job as it is performed generally, that finding is also unsupported.  For example, the DOT description relied upon by the ALJ reflects that the position requires constant "reaching."  See DOT # 211.462-014.  Although the ALJ stated that the job did not require overhead reaching, the DOT description does not differentiate between types of reaching, and it is not inconceivable that the position may require some type of overhead reaching.  In addition, the DOT description does not address the need to alternate between sitting and standing or the need for a low-stress environment, both of which the ALJ included in his assessment of Plaintiff's RFC.  Notably, the Commissioner does not address these particular inconsistencies. Accordingly, for the reasons set forth above, the ALJ's finding that Plaintiff can perform her past relevant work is not supported by substantial evidence.[6]

---

[6]Although the Plaintiff challenges only in passing the ALJ's RFC determination, the following observations are made.  The ALJ in this case "accord[ed] greatest weight" to the September 2002 physical functional capacity opinion of the state agency doctor who opined that Plaintiff could perform light exertional work with occasional limitations for pushing, pulling, reaching overhead, climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, and avoidance of climbing ladders/ropes/scaffolds or moderate exposure to hazards.  See (R. 13).  The ALJ, however, did not include all of those limitations

11

By her second claim, Plaintiff argues that the ALJ erred by alternatively finding that she retained the ability to perform a "wide range" of light exertional work and relying exclusively on the grids in finding her not disabled. In Plaintiff's view, her nonexertional mental limitations precluded such findings and required vocational expert testimony. (Doc. 19 at 9-11).

---

in his RFC determination or explain why he chose not to. Compare (R. 15) with (R. 218-25). In similar fashion, the ALJ adopted the opinion of the state agency psychologist, who indicated in a Psychiatric Review Technique Form that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (R. 12-13). Although this psychologist subsequently completed a more detailed mental RFC assessment form, the ALJ did not mention or discuss those more particularized mental limitations, which included moderate limitations in the ability to (1) understand, remember and carry out detailed instructions, (2) maintain attention and concentration for extended periods, and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. See (R. 243-44). This examiner also opined that Plaintiff "should be able to function for two-hour periods." See (R. 245). To this end, administrative adjudicators are cautioned that:

> . . . [t]he Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. *The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.*

SSR 96-8p, 1996 WL 374184, * 4 (S.S.A.) (emphasis added). On remand, the ALJ should also consider this mental RFC form.

12

This case presents the recurring issue of whether the ALJ may rely exclusively on the grids for decision, or whether a vocational expert is required. As noted recently by the Eleventh Circuit, "[t]he general rule is that after determining the claimant's [residual functional capacity] and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). However, it is well established that it is *inappropriate* for the ALJ to rely exclusively on the grids if the claimant is unable to perform a full range or unlimited types of work given the claimant's exertional limitations and/or if the claimant has non-exertional impairments that significantly limit the claimant's ability to perform basic work skills. Id.; Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989); Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985). The decision in Foote offers further guidance on this matter:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . . The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors . . . Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . . Pain is a nonexertional impairment. . . . Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony.

Id. at 1559 (citations omitted).

Thus, as indicated above, nonexertional limitations cause the grids to be inapplicable only when they are severe enough to prevent a wide range of gainful employment at a given exertional level. Id.; see also Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). Where an ALJ makes a specific finding that a claimant's nonexertional limitations do not preclude a wide range of employment at the given exertional level, that finding is reviewed only to determine whether it is supported by substantial evidence. Sryock, 764 F.2d at 836. To this end, the Eleventh Circuit has held that, "[a]n ALJ's conclusion that a claimant's limitations do no significantly compromise [her] basic work skills or are not severe enough to preclude [her] from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert." Marbury, 957 F.2d at 839 (citing Allen, 880 F.2d at 1202).

Upon careful consideration and in light of the above authority, I conclude that the ALJ also erred by relying exclusively on the grids for his alternative conclusion. Here, the ALJ found that the Plaintiff's neck and shoulder numbness and pain, dysthymia, personality disorder and alcohol dependence limited her to light exertional work in a non-high stress environment that required only simple and short instructions, accommodated mild and moderate mental limitations[7] and the option to sit or stand at will, and did not require pushing, pulling, reaching overhead, or climbing stairs or ladders. (R. 12, 14-15). While recognizing that the grids would apply and direct a finding of not disabled if Plaintiff could perform the "full range" of light work, the ALJ concluded that:

---

[7]While unclear, it appears that the ALJ equated the ability to understand, remember and carry out short and simple instructions in a non-high stress work environment with the mild and moderate limitations mental limitations he adopted.

14

> [a]lthough the claimant's additional limitations preclude the performance of the *full* range of light work, the additional limitations do not significantly erode the occupational base of jobs at that level, and there remain a significant number of jobs that the claimant can perform. Therefore, a finding of "not disabled" is made within the framework of Medical Vocational Rule 202.18.

(R. 14). Thus, while the ALJ made an explicit finding that Plaintiff's [nonexertional] impairments did not significantly limit her basics work skills in accordance with the requirement set forth in Sryock, i.e., they did not significantly erode the occupational base of light exertional jobs, his finding is not supported by substantial evidence in the absence of vocational expert testimony. See Marbury, 957 F.2d at 839, Allen, 880 F.2d at 1202.[8] Notably, the Commissioner does not respond in substance to this argument. Under these circumstances, the ALJ was required to obtain vocational expert testimony, and remand for further consideration on this ground is warranted.

By her final claim, Plaintiff argues that the ALJ's reasons for discrediting her subjective complaints are insufficient.[9] Here, the Plaintiff testified generally that she is disabled by debilitating neck, back and shoulder pain. She also testified that she suffers from

---

[8] A number of other decisions in this circuit have also determined the need to call a vocational expert in lieu of exclusive reliance on the grids. See Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988) (limitation on climbing, balancing, working at heights or around dangerous machinery); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) (postural and manipulative limitations); Gibson v. Heckler, 762 F.2d 1516, 1521 (11th Cir. 1985) (limitation on sitting and standing); McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988) (limitation on sitting and standing); Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990) (pain and dizziness); Falcon v. Heckler, 732 F.2d 827 (11th Cir. 1984) (depression and low back pain); Patterson v. Bowen, 799 F.2d 1455, 1459 (11th Cir. 1986) (limited grip strength and dexterity).

[9] Plaintiff also argues that the ALJ erred by failing to properly credit the opinion of Dr. Joseph Shankin and not seeking clarification of his opinion. That argument is without merit. Inexplicably, both the ALJ and the Plaintiff erroneously attributed this medical record to the Plaintiff. It is not hers. See (198-201).

15

depression and has migraine-like headaches when her neck flares up. According to Plaintiff, she can sit for a half hour and walk for about ten minutes. The ALJ discounted this testimony, explaining that (1) Plaintiff did not report complaints of depression to her doctor until she completed her request for reconsideration and was appointed a representative, (2) she sought little medical help for her complaints and the last treating source report was from January 2002, and (3) her allegation that she could not afford medical care is not believable in light of the fact that her application for Medicaid was denied because her husband made too much money and because she has funds to purchase beer.[10] (R. 12).

Because remand is warranted on other grounds, this argument requires only brief discussion. First, I agree completely with Plaintiff's assertion that the denial of medical assistance (Medicaid) is not necessarily inconsistent with the lack of sufficient funds to seek medical attention. Second, while the decision to purchase six to twelve beers a day is not prudent, particularly given Plaintiff's complaints, I simply cannot find that it is a sufficient reason to reject *outright* Plaintiff's claim that she is unable to afford doctor's visits, testing, physical therapy or prescription drugs. If Plaintiff is financially unable to obtain needed treatment for her physical and/or mental impairments, the ALJ's explanation that the medical record does not include any treating source notes after a given date or that Plaintiff did not seek help for her depression until after she was appointed a representative is unpersuasive. On remand, the ALJ should further inquire on the Plaintiff's ability to afford medical treatment before using her lack of treatment as a basis for discrediting her.

---

[10]While Plaintiff claims the ALJ discredited her allegations based in part on her activities of daily living, I do not read the decision as broadly. See (Doc. 11). Should the ALJ rely on such to discount her subjective allegations on remand, his finding should be sufficiently explicit and it should not ignore Plaintiff's explanation as to how she manages to accomplish the activities relied upon by the ALJ.

16

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 23rd day of September 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record